UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL BROWN, individually and as agent
on behalf of former equity holders of Emergent
Properties Inc.,

                        Plaintiff,                            23-cv-6684 (PKC)

       -against-                                   OPINION AND ORDER

BUILDING ENGINES, INC.,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Michael Brown asserts claims against defendant Building Engines, Inc. ("Building Engines") for breach of contract, breach of the implied covenant of good faith and fair dealing, deceptive trade practices, rescission, and fraudulent inducement. This is not the first action brought by Brown relating to the acquisition by Building Engines of a company co-founded by Brown known as LogCheck. The Court granted a motion to dismiss Brown's prior declaratory judgment action against Building Engines, and the Second Circuit affirmed. See Brown on behalf of Emergent Properties Inc. v. Building Engines Inc., 2022 WL 3274124 (S.D.N.Y. Aug. 11, 2022) (Castel, J.), affirmed sub nom. Brown v. Building Engines, Inc., 2023 WL 4540565 (2d Cir. July 14, 2023) (summary order).

        Building Engines moves to dismiss Brown's new action to the extent it asserts claims for deceptive trade practices, rescission, and fraudulent inducement, asserting that these claims are precluded under the doctrine of res judicata. Building Engines also moves to dismiss one of Brown's claims for breach of contract and his claims for breach of the implied covenant of good faith and fair dealing and deceptive trade practices for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. Finally, Building Engines argues that Brown has not pled his fraudulent

1

inducement claim with requisite particularity under Rule 9(b), Fed. R. Civ. P. For the reasons that will be explained, including the unusual procedural posture of the prior action, the Court rejects Building Engines's res judicata assertion but will grant its motion to dismiss for failure to state a claim for relief and failure to allege fraud with the requisite particularity. Building Engines has not moved against two of Brown's contract-based claims, and those claims survive.

BACKGROUND

The facts recounted below are taken from the First Amended Complaint (ECF 19) and are accepted as true for the purposes of this motion. In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007).

Brown co-founded LogCheck, a startup software company, in approximately 2012 to 2013. (ECF 19 ¶ 14.) One of LogCheck's "core customer relationships" that generated its revenue was with Jones Lang LaSalle, Inc. ("JLL"). (Id. ¶¶ 13, 15.) In 2021, Building Engines, a company that specializes in building operations software for commercial real estate, entered into an agreement to purchase LogCheck. (Id. ¶ 16.) The parties agreed that Building Engines would purchase LogCheck for a total of $12.5 million: $10 million in cash, $1 million in Building Engines equity, and $1.5 million as an "earnout" to be paid in the future. (Id.) LogCheck and Building Engines ultimately entered into a merger agreement (the "LogCheck Merger Agreement") on May 28, 2021 and the transaction closed simultaneously. (Id. ¶ 26.) LogCheck disclosed to Building Engines during merger negotiations that JLL was one of its main customers. (Id. ¶¶ 22, 29-30.)

The LogCheck Merger Agreement contains a provision that provided for a one-year "Earnout Period," followed by a six-month period in which an earnout payment to

LogCheck would be calculated based on a "contracted annual recurring revenue" or "CARR" formula generated from LogCheck software subscriptions. (Id. ¶ 27.) The maximum payout under this provision was $1.5 million. (Id.) Section 2.3(e) of the Merger Agreement provided for circumstances that would accelerate the payment of the earnout, including a "Sale Event." (Id. ¶¶ 31-32.) The Merger Agreement also provided that "Contemplated Recap," another defined term, was not a circumstance that would require acceleration of the payment. (Id. ¶ 117.)

    Six months after the closing of the LogCheck transaction, on November 23, 2021, JLL acquired Building Engines. (Id. ¶¶ 50, 57.) Brown acknowledges that "[d]uring negotiations, Building Engines and its primary investor informed [Brown and others] and their financial advisors that they were pursuing a round of funding in the form of seeking a new private equity shareholder." (Id. ¶ 18.) Brown alleges that Building Engines was aware of the possibility of a sale to JLL at the time of the LogCheck Merger Agreement and did not disclose that it was facilitating a due diligence review of Building Engines by JLL, a major customer of LogCheck. (Id. ¶¶ 37, 51.) Brown asserts that individuals at Building Engines knew or should have known that being acquired by JLL was "substantively distinct" from replacing a private equity shareholder. (Id. ¶¶ 23-24.) Moreover, Brown contends that Building Engines knew or should have known that a sale to a company that LogCheck had disclosed as one of its Material Contracts and that competed within LogCheck's customer base would be disruptive to LogCheck's revenue pipeline, more so than the purported private equity shareholder replacement would have been. (Id. ¶ 25.)

    The Earnout Period expired on May 28, 2022, one year after the LogCheck Merger Agreement closed. (Id. ¶ 67.) Brown resigned from LogCheck for "Good Reason," a defined term, on June 3, 2022. (Id. ¶ 68.) On December 6, 2022, Building Engines provided

Brown with the "CARR" calculation, which, "due to outstanding accounts receivable," calculated the earnout payment as $0. (Id. ¶¶ 70-71.) Brown alleges that this $0 payout was due to Building Engines's actions in not disclosing the possible acquisition by JLL to LogCheck before entering into the LogCheck Merger Agreement, which in turn materially reduced LogCheck's ability to generate CARR. (Id. ¶¶ 51-52, 71.) He also alleges that, during the Earnout Period, Building Engines diverted resources away from LogCheck in order to inhibit its ability to generate CARR and earn the maximum earnout payment—also allegedly in violation of the LogCheck Merger Agreement. (Id. ¶¶ 63-64, 72-77.)

JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (ECF 19 ¶ 8.) Brown is a citizen of New York. (Id. ¶ 11; ECF 8 at 2.)[1] Building Engines is a corporation organized under the laws of Delaware that maintains its principal place of business in Massachusetts, and thus is a citizen of both states. (ECF 19 ¶ 13.) Complete diversity thus exists, and the amount in controversy exceeds the jurisdictional threshold. (Id. ¶ 8.)

PROCEDURAL HISTORY

    A. Brown I

Brown filed an action on December 20, 2021, asserting one count for "declaratory relief" under both the federal Declaratory Judgment Act and the Delaware Declaratory Judgment

---

[1] In the First Amended Complaint, Brown states that he "resides" in New York (ECF 19 ¶ 11), but for the purposes of alleging diversity jurisdiction, an individual's state of citizenship is not determined by his state of residence but by his state of domicile. Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998); see also Leveraged Leasing Administration Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 47 (2d Cir. 1996) ("[A] statement of the parties' residence is insufficient to establish their citizenship."). Brown later submitted a Rule 7.1 statement clarifying that he is a "citizen" of the state of New York. (ECF 8 at 2.)

Act.  Brown sought "a declaratory judgment that (i) the JLL Merger was a Sale Event, but not the Contemplated Recap; (ii) the earnout payment accelerated as of, at latest, November 23, 2021; and (iii) Defendant must therefore specifically perform by paying the earnout amount of $1,500,000, plus any interest."  (Brown I, 21-cv-10893, ECF 1 ¶ 63.)  Building Engines moved to dismiss Brown's claims for failure to state a claim, Rule 12(b)(6), Fed. R. Civ. P.  (21-cv-10893, ECF 14.)

The Judge to whom Brown I was originally assigned referred the motion to dismiss to Magistrate Judge Aaron.  (21-cv-10893, ECF 17.)  After the motion was referred, the action was reassigned to the undersigned.  (21-cv-10893, Minute Entry 4/4/2022.)

Judge Aaron issued a Report and Recommendation recommending dismissal of Brown's complaint with leave to amend.  (21-cv-10893, ECF 32.)  Judge Aaron noted that Brown sought both "a declaratory judgment" as well as "an order of specific performance" in his complaint.  (Id. at 6.)  Construing the LogCheck Merger Agreement, Judge Aaron concluded that "the JLL Merger was a Sale Event that occurred before December 31, 2021, and thus that the JLL Merger was the Contemplated Recap"—in other words, an event that did not trigger acceleration of the earnout payment.  (Id. at 13.)  Brown requested that, if the Court ruled against his interpretation of the Merger Agreement, "he may seek to amend the Complaint to add breach of contract claims and additional claims for declaratory relief," and planned to "seek leave to amend to assert claims based on Defendant's alleged breach of § 2.3(c) of the Merger Agreement due to actions taken by Defendant to reduce the Earnout Payment Amount."  (Id. at 14.)

This Court adopted Judge Aaron's report and dismissed Brown's complaint for failure to state a claim.  (21-cv-10893, ECF 35.)  The Court explicitly adopted Judge Aaron's grant of leave to amend to Brown.  (Id. at 2.)  But instead of amending his complaint, Brown

appealed to the Second Circuit, which affirmed.  Brown v. Building Engines, 2023 WL 4540565, at *2.  The Second Circuit noted that the grant of leave to amend may have rendered this Court's Order non-final, but it rested its ability to reach the challenged ruling on the basis of its assertion of "hypothetical jurisdiction."  Id. at *1.

After the Second Circuit ruled but before the mandate issued, Brown purported to file an amended complaint.  (21-cv-10893, ECF 37.)  Thereafter, the parties agreed to a stipulation entered as an Order dismissing Brown I without prejudice that provided, among other things, that "[t]he plaintiff will refile the Amended Complaint in this Court as a new Complaint."  (21-cv-10893, ECF 39 ¶ 3.)

B.  Brown II

Brown brought the instant action ("Brown II") on July 31, 2023.  (23-cv-6684, ECF 1.)

Building Engines filed a seven-page, single-spaced pre-motion letter detailing the basis for a proposed motion to dismiss.  (ECF 11.)  At a pre-trial conference, Brown sought leave to further amend his complaint, which the Court granted.  Brown filed a "First Amended Complaint" on October 25, 2023.  (Minute Entry, 10/11/23; ECF 19.)  In his "First Amended Complaint" in this action, i.e., the operative pleading, Brown alleges that Building Engines (1) breached two sections of the Merger Agreement (id. ¶¶ 90-99); (2) breached Brown's employment offer letter with Building Engines, thereby breaching the Merger Agreement (id. ¶¶ 100-03); (3) breached the covenant of good faith and fair dealing (id. ¶¶ 104-06); (4) engaged in deceptive trade practices (id. ¶¶ 107-15); and (5) fraudulently induced Brown to enter into the Merger Agreement (id. ¶¶ 122-29).  As a result, Brown seeks rescission of the LogCheck Merger

6

Agreement based on the parties' alleged mistake of fact about the nature of its earnout payment provision.  (Id. ¶¶ 116-21.)

Building Engines partially moves to dismiss Brown's "First Amended Complaint," seeking dismissal of Counts III through VII, but not the breach of contract claims in Counts I and II.  (ECF 28, 29.)  As noted, the Court will grant the motion to dismiss.

LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court is "not bound to accept as true [] legal conclusion[s] couched as [] factual allegation[s]" when reviewing a motion to dismiss, however.  Id. at 678.

"[O]n a motion to dismiss [under Rule 12(b)(6)], a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'"  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)).  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint.  United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021), cert. denied, 142 S. Ct. 2679 (2022) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)).  A "plaintiff's reliance on the terms

7

and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers, 282 F.3d at 153 (citing Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)) (footnote omitted) (emphasis in original). These documents must be "integral" to the complaint, known to the plaintiff, and not challenged as to their authenticity, accuracy, or relevance. Donoghue v. Gad, 2022 WL 3156181, at *3 (S.D.N.Y. Aug. 8, 2022) (Failla, J.).

        Brown relies heavily on the LogCheck Merger Agreement and "Offer of Employment" by Building Engines (which Brown refers to as the "BE Offer") in his First Amended Complaint—including three claims of breach of these agreements—but does not attach them as exhibits. Building Engines has provided a copy of the Offer of Employment and at least a partial version of the LogCheck Merger Agreement in support of its motion to dismiss. (ECF 26, 27.)[2] The Court determines that these were documents in Brown's possession, of which he had knowledge, and that are integral to the allegations of the First Amended Complaint. In his opposition brief, Brown does not challenge that the documents submitted were the agreements referred to in the First Amended Complaint and in fact cites to the documents Building Engines has submitted. (See, e.g., ECF 31 at 2-3 (citing ECF 26).) They therefore may be considered by the Court in deciding Building Engines's motion to dismiss.

---

[2] The Court notes that the LogCheck Merger Agreement does not appear to attach any of its listed exhibits, schedules or annexes other than Exhibit A. (See ECF 26 at v.) Building Engines sought to file the LogCheck Merger Agreement (ECF 26) and the Offer of Employment (ECF 27) under seal, unopposed by Brown. (ECF 24.) The Court denied this request, noting that Building Engines's allegations of harm were conclusory, overbroad, and did not satisfy the Lugosch standard. (ECF 30.) See also Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006).

DISCUSSION

I. Res Judicata Does Not Preclude Brown's Claims for Deceptive Trade Practices (Count V), Rescission of Contract Based on Parties' Mistake of Fact (Count VI), and Fraudulent Inducement (Count VII).

Building Engines first moves to dismiss three of Brown's claims on res judicata grounds. "The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same. Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017) (citations and internal quotation marks omitted).

The Court concludes that res judicata does not bar Brown's claims in this action because the prior action did not result in a final judgment on the merits. After the Second Circuit affirmed this Court in Brown I, the parties filed a joint stipulation to dismiss the amended complaint "without prejudice." (21-cv-10893, ECF 39 ¶ 1.) In the stipulation, the parties described Brown's appeal to the Second Circuit as an "interlocutory appeal" and agreed to dismiss the complaint in Brown I without prejudice and to refile it as a new complaint in a new action before this Court. (Id. at 1-2.) Indeed, the notice of appeal that resulted in the Second Circuit's ruling is shown on the docket as a "notice of interlocutory appeal." (21-cv-10893, ECF 36.)

9

The law governing res judicata in a diversity action is "the law that would be applied by state courts in the State in which the federal diversity court sits"—here, the state of New York.  Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Company, 600 F.3d 190, 195 (2d Cir. 2010) (citation omitted).  New York and federal res judicata law have "no discernible difference."  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).  Under New York law, dismissal without prejudice is not a "final" judgment on the merits for purposes of res judicata.  See Landau v. LaRossa, Mitchell & Ross, 11 N.Y.3d 8, 13 (2008) (citing Miller Manufacturing Co. v Zeiler, 45 N.Y.2d 956, 958 (1978)) ("[A] dismissal 'without prejudice' lacks a necessary element of res judicata—by its terms such a judgment is not a final determination on the merits."); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990) (quoting Rule 41(a)(1), Fed. R. Civ. P.) ("'[D]ismissal . . . without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' and thus does not have a res judicata effect.").

Because there was no final judgment on the merits in Brown I and the action was dismissed without prejudice, the doctrine of res judicata does not bar the claims asserted in Brown II.

II. Brown Fails to State Claims for Breach of Contract (Count III), Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV), and Deceptive Trade Practices (Count V).

Building Engines also contends that several of Brown's claims—for breach of contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and deceptive trade practices (Count V)—should be dismissed for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P.  The Court agrees.

10

A. <u>Plaintiff Has Failed to State a Claim for Breach of Contract (Count III).</u>

While Brown brings three distinct claims for breach of contract (Counts I through III), Building Engines only seeks dismissal of Brown's claim that it breached it Merger Agreement by breaching the Offer of Employment in failing to pay severance following Brown's resignation (Count III).  (ECF 19 at ¶ 103; ECF 29 at 17.)  Brown alleges that he resigned from Building Engines "with good reason shortly following the conclusion of the Earnout Period (as defined under the Merger Agreement)."  (ECF 19 ¶ 100.)  Brown alleges that Building Engines wrongfully refused to provide him with the severance to which he was entitled under the Offer of Employment.  (<u>Id.</u> ¶ 102.)  This, Brown alleges, was a breach of the Merger Agreement.

The "Offer of Employment" is a letter constituting an offer to Brown from Building Engines, dated May 27, 2021.  It is not attached to the First Amended Complaint but is attached as an exhibit to the motion to dismiss.  (ECF 27.)  The Offer of Employment, as submitted, has two exhibits of its own: Exhibit A and Exhibit B.  The Offer of Employment provides: "Subject to Exhibits A and B, in the event that the Company terminates your employment without Cause or you terminate your employment with Good Reason, you shall be entitled to receive . . . continuing severance pay for six (6) months at the rate of your then current base salary . . . and … no other severance or benefits of any kind, unless required by law."  (ECF 27 at 1-2.)

Brown alleges that he resigned for "good reason" in his FAC.  (ECF 19 ¶¶ 68, 100.)  "Good Reason" is a defined term in the Offer of Employment, but not in the LogCheck Merger Agreement: "For the purposes of this offer letter, 'Good Reason' shall mean your resignation within 30 days following the expiration of any Company cure period (discussed below) following the occurrence of one or more of the following, without your express written

11

consent . . . . (ii) a material breach of <u>this Agreement</u> by the Company." (ECF 27, Ex. A.) (emphasis added.)

Brown contends that the term "this Agreement" in clause (ii) refers to the LogCheck Merger Agreement and that, therefore, when Building Engines allegedly breached the LogCheck Merger Agreement (as asserted in Counts I and II), clause (ii) of the Offer of Employment was triggered and Brown became entitled to a severance payment. Brown therefore alleges that this failure to pay him severance is a separate breach of the Merger Agreement. (ECF 19 ¶ 103.) The contentions are without merit, because the words "this Agreement," as used in the Offer of Employment, unambiguously refer to the Offer of Employment and not to the Merger Agreement.

The Offer of Employment is precise in its reference to particular agreements. It uses the term "Merger Agreement," defined as "that certain Merger Agreement, by and between the Company, and Emergent Properties, Inc. ('Emergent') (as amended, modified, or supplemented from time to time in accordance with its terms . . . )." (ECF 27 at 1.) It refers to the "Employee Confidential Information and Inventions Assignment Agreement" as the "PIIA." (<u>Id.</u> at 2.) The only place within the Offer of Employment in which the standalone term "this Agreement" is capitalized is in the "Good Reason" clause. The Court must therefore interpret the contract to determine the meaning of the term "this Agreement" as used in this clause.

"When interpreting a contract, Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language." <u>BitGo Holdings, Inc. v. Galaxy Digital Holdings, Ltd.</u>, 319 A.3d 310, 322 (Del. 2024) (citation omitted). "A provision in a contract is ambiguous 'when the provision in controversy is reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'" <u>Id.</u> (citation omitted).

"The determination of ambiguity lies within the sole province of the court." Weinberg v. Waystar, Inc., 294 A.3d 1039, 1044 (Del. 2023) (citation omitted).

"Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." Id. (citation omitted). "Moreover, '[i]n giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract.' Where language is unambiguous, we 'will give effect to the plain meaning of the contract's terms and provisions.'" Id. (citations omitted).

An objective, reasonable third party would conclude that the phrase "this Agreement" in clause (ii) of the definition of "Good Reason" refers to the fully executed Offer of Employment and not the LogCheck Merger Agreement. The use of the word "this" points to the agreement in which it is used to the exclusion of other agreements between the parties.[3] There is no ambiguity created by the title of the document as an "Offer of Employment" rather than as an employment agreement. The offer letter was signed by the CEO of Building Engines and a separate line was provided for Brown under "Acknowledged and accepted." Below those words, Brown's signature appears. (ECF 27 at 2-3.) Thus, the parties understood—and an objective, reasonable third party would understand—that the Offer of Employment upon full execution became an agreement between the parties.

The Court's conclusion is bolstered by a review of the LogCheck Merger Agreement, which refers to separate "Offer Letter[s]" and "Offer Packages" that Building Engines may provide to certain employees of LogCheck post-merger. (ECF 26 at 55, Section 5.3(a) ("New Employment Arrangements. (a) Parent may offer certain Employees, including the

---

[3] See This, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/this (last accessed Sept. 25, 2024) ("being the . . . thing, or idea that is present or near in place, time, or thought or that has just been mentioned. . . .").

13

Key Employees, 'at will' employment by Parent . . . . Such 'at will' employment will: (i) be set forth in offer letters on Parent's standard form (each, an 'Offer Letter') . . . . (iii) have terms, including the position and salary, which will be determined by Parent . . . .").)  The first page of the LogCheck Merger Agreement states that these "Offer Packages" were "[a]s an inducement to enter into the Agreement"—not as part of the Merger Agreement itself.  (Id. at 1-2; id. at A-10.)

The Court concludes that breach of the Offer of Employment does not constitute a breach of the LogCheck Merger Agreement, and Brown's claim under Count III thus fails.

B. Plaintiff Has Failed to State a Claim for Breach of Implied Covenant of Good Faith and Fair Dealing (Count IV).

Delaware law provides that "the implied covenant [of good faith and fair dealing] is inherent in all contracts" and "embodies the law's expectation that 'each party to a contract will act with good faith toward the other with respect to the subject matter of the contract.'" Baldwin v. New Wood Resources LLC, 283 A.3d 1099, 1116 (Del. 2022).  "The implied covenant 'requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain.'"  Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 124 (2d Cir. 2022) (quoting Dunlap v. State Farm Fire & Casualty Co., 878 A.2d 434, 442 (Del. 2005)).  "Where a plaintiff has failed to identify a gap in the contract, merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing."  Sapp v. Industrial Action Services, LLC, 2024 WL 3444633, at *5 (D. Del. July 17, 2024) (quoting Haney v. Blackhawk Network Holdings, Inc., 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016)).

Brown alleges that Building Engines has breached its implied duty of good faith and fair dealing inherent in the LogCheck Merger Agreement. (ECF 19 ¶¶ 105-06.) Building Engines contends that the one paragraph Brown includes in Count IV of the First Amended Complaint to support his breach of implied covenant claim is insufficient to state a claim. (ECF 29 at 18 (citing ECF 19 ¶ 105).) Brown urges the Court to read the First Amended Complaint more liberally in construing his claim, citing Building Engines's alleged conduct in merging with JLL and entering into diligence with JLL without disclosing it to Brown and making fraudulent representations to him about it. (ECF 31 at 17.) Building Engines responds that, at best, Brown's claim for breach of the implied covenant is simply duplicative of the allegations he makes in Counts I and II—the breach of contract claims that Building Engines has not moved to dismiss. (ECF 29 at 18-19.)

The Court agrees. Counts I and II allege that Building Engines breached Section 2.3(c) of the Merger Agreement by, among other things, failing to provide LogCheck resources sufficient to support their ongoing sales and marketing and collection of accounts receivable during the Earnout Period, causing a significant reduction in CARR and the earnout payment, and that it took actions to inhibit LogCheck's ability to generate sufficient CARR, including by being acquired by JLL, failing to disclose that to LogCheck's founders before the public announcement of the deal, and by diverting LogCheck's product and sales to its own "Prism" products. (ECF 19 ¶¶ 90-99.) The allegations supporting Brown's claim for breach of the implied covenant—both in the FAC (id. ¶¶ 104-06) and in his opposition brief (ECF 31 at 17-18)—are duplicative of the non-dismissed Counts I and II for breach of contract. (See ECF 19 ¶ 105; ECF 31 at 17.)

Brown's claim that Building Engines breached the implied covenant of good faith and fair dealing is subsumed within Counts I and II. Count IV will be dismissed.

### C. Plaintiff Has Failed to State a Claim for Deceptive Trade Practices (Count V).

The Delaware Uniform Deceptive Trade Practices Act ("DTPA") "bans 'disparag[ing] the goods, services, or business of another by false or misleading representation[s] of fact.'" Registered Agent Solutions, Inc. v. Corporation Service Co., 2022 WL 911253, at *6 (D. Del. Mar. 28, 2022) (quoting Del. Code Ann. tit. 6, § 2532(a)(8)). The DTPA only encompasses a pattern of ongoing practices, however, not single instances of conduct or "past wrongs." Id. A plaintiff seeking to establish a claim under the DTPA must therefore establish that they are entitled to injunctive relief to stop that ongoing conduct. Id. (citing Wright v. Portfolio Recovery Affiliates, 2011 WL 1226115, at *5 (D. Del. Mar. 30, 2011)). To do so, a plaintiff "must plead facts 'that create a reasonable apprehension of a future wrong.'" Id. (quoting State ex rel. Brady v. Pettinaro Enterprises, 870 A.2d 513, 536 (Del. Ch. 2005)).

Brown fails to do so here. The First Amended Complaint contains no allegations of any "reasonable apprehension of a future wrong." While Brown does seek both damages and injunctive relief for his DPTA claim (ECF 19 ¶¶ 113-15), he does not allege a pattern of ongoing activity. Instead, Brown alleges that the activity giving rise to a violation of the DPTA is Building Engines's "caus[ing] likelihood of confusion or misunderstanding in characterizing a highly disruptive strategic sale into LogCheck's Material Customer base as a 'substitution of one private equity partner for another.'" (Id. ¶ 109.) He also alleges that such "false pretenses" "defrauded" both LogCheck and JLL into entering into business transactions with Building Engines. (Id. ¶ 111.) But the "business transactions" Brown describes in his First Amended

Complaint between Building Engines and either LogCheck or JLL were merger transactions that have now been completed.

Brown also includes an allegation in the First Amended Complaint that Building Engines's "numerous deceptive trade practices resulted in a materially inaccurate valuation of Building Engines, on which JLL and its shareholders ultimately relied to their detriment in acquiring Building Engines." (Id. ¶ 54.) But this statement appears to allege an injury to JLL stakeholders—not to Brown or the Equityholders. These allegations are therefore not sufficient to support Brown's DPTA claim.

III. Brown Fails to Plead Fraudulent Inducement (Count VII) with Requisite Particularity under Rule 9(b).

Finally, Building Engines also asserts that Brown has not pled his fraudulent inducement claim with requisite particularity under Rule 9(b), Fed. R. Civ. P. The Court agrees.

"[T]o state a claim for fraudulent inducement under Delaware law, a plaintiff must satisfy all the elements of common-law fraud." Accelerant Twister, LLC v. Marjo, LLC, 2023 WL 4457422, at *4 (D. Del. July 11, 2023) (citing Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018)). "Those elements are: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." Id. at *4-5 (quoting E.I. DuPont de Nemours & Co. v. Florida Evergreen Foliage, 744 A.2d 457, 461–62 (Del. 1999)). For claims of fraudulent inducement, however, a plaintiff must also meet the heightened pleading requirements

17

of Rule 9(b), Fed. R. Civ. P., providing "'all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." Accelerant Twister, 2023 WL 4457422 at *5 (quoting U.S. ex rel. Whatley, 657 F. App'x 89, 93 (3d Cir. 2016)); see also Rule 9(b), Fed. R. Civ. P. ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Brown alleges that Building Engines "made certain representations" to him that it "knew or should have known . . . were false when made," "with the intention of deceiving [Brown] and inducing [him] to enter into the Merger Agreement." (ECF 19 ¶¶ 123–26.) Brown does allege specific details about one statement made by Building Engines's CEO Tim Curran, who, he claims, fraudulently induced him and his partners at LogCheck to enter into the LogCheck Merger Agreement. But that statement cannot support Brown's fraudulent inducement claim because it concededly took place after the Merger Agreement had been signed and the transaction consummated. The First Amended Complaint quotes Curran at an all-employee meeting on July 28, 2021, defining the "recap" as a change in shareholders. (Id. ¶ 47.) This would have been two months after the execution and closing of the LogCheck Merger Agreement, which occurred on May 28, 2021. (Id. ¶ 26.) While the level of particularity of that allegation is sufficient to survive Rule 9(b), it cannot have fraudulently induced Brown and LogCheck to enter into the LogCheck Merger Agreement, because it took place after the merger closed on May 28, 2021. (Id.)

Brown's other assertions that Building Engines made fraudulent and false statements to induce him into the Merger Agreement are conclusory; Brown does not identify a single specific statement other than the July 2021 statement by Curran, and while he does

identify those who made fraudulent statements as Curran, Nina Laven, a person with the last name "O'Driscoll," and "authorized representatives" of Building Engines and their largest investor, Wavecrest, he identifies no specific statements by them or when or where such statements were made. (Id. ¶¶ 19-25, 37-39, 46, 53, 122-29.) Brown's claim for fraudulent inducement therefore fails for lack of specificity under Rule 9(b).

IV.    Brown's Claim for Rescission (Count VI) Also Fails.

Finally, the Court notes that Brown brings a claim for "Rescission (Mistake)" in Count VI of his First Amended Complaint. But rescission is a remedy, not a claim in and of itself. See Geronta Funding v. Brighthouse Life Insurance Company, 284 A.3d 47, 61 (Del. 2022) (citation omitted) ("Rescission is a contractual remedy that can be sought at law or in equity."); iBio, Inc. v. Fraunhofer USA, Inc., 2020 WL 5745541, at *12 (Del. Ch. Sept. 25, 2020) (citations omitted) ("[T]his Court has noted that 'claims' for injunctions, constructive trusts, and rescission are remedies, rather than causes of action. . . . Dismissing counts that seek remedies instead of asserting claims is useful in 'clean[ing] up the pleadings.'").

The Court therefore dismisses Count VI of the First Amended Complaint on those grounds.

CONCLUSION

Building Engines's motion to dismiss is GRANTED. The Court DISMISSES Count III (breach of contract), Count IV (implied covenant of good faith and fair dealing), Count V (deceptive trade practices), Count VI (rescission), and Count VII (fraudulent inducement).

19

The Clerk of Court is respectfully requested to unseal ECF 26 and ECF 27 and terminate the motion (ECF 28.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 25, 2024